# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD N. HORINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 05-cv-0079-MJR |
| ) | |
| CITY OF GRANITE CITY, ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

On April 27, 2005, Plaintiff Donald N. Horina filed a "Motion for Temporary and Preliminary Injunction" (Doc. 7) against Defendant City of Granite City, Illinois (hereinafter "Granite City"). In his motion, Horina moves for a temporary and preliminary injunction against Granite City prohibiting Granite City from enforcing its ordinance, Chapter 5.78.010, which in part, makes it unlawful to distribute handbills on any public place in Granite City. Horina argues that the ordinance violates both his and the other third persons' First and Fourteenth Amendment rights.

A hearing was held on this matter on May 20, 2005, where testimony was heard, evidence was presented, and arguments were made. At the hearing, Granite City challenged whether Horina has standing to seek an injunction against Granite City. As a result, the Court entered a briefing schedule, and Granite City filed its "Post-Hearing Brief" (Doc. 17) to which Horina responded (Doc. 23) and then Granite City replied (Doc. 25). The issue of standing being fully briefed, the Court begins its analysis with a brief recitation of the factual background and procedural history.

1

**Factual Background and Procedural History**

Horina is a Christian who feels obligated to tell others about their need to be "born again." He accomplishes his purpose primarily through public distribution of free religious literature, also known as gospel tracts.[1] Horina offers the tracts on public sidewalks and places them on automobile windshields in a manner that does not impede pedestrian traffic.

On July 26, 2003, Horina was distributing gospel tracts on a public sidewalk in Granite City, Illinois on the 2000 block of Iowa Avenue, which is a sidewalk located in front of Hope Clinic. Hope Clinic is a medical facility, that among other procedures, performs abortions. Horina placed a gospel tract through the open window of a vehicle belonging to Nathaniel Lang ("Lang"), a security guard employed at Hope Clinic. Lang had repeatedly asked Horina not to put anything on or in his car. As a result of Horina's placing the gospel tract in the car, Lang contacted the Granite City Police Department. Granite City Police Officer Ronald Fisher issued a ticket to Horina for violating Chapter 5.78.010[2], the Handbill Distribution Ordinance (hereinafter "the ordinance").

On April 19, 2004, Horina appeared at an administrative hearing regarding the ticket. At the hearing the citation was amended to a charge of trespass to vehicle under a different city

---

[1] Horina testified his religious tracts carry the following message: "Jesus loves the sinners, Jesus died on the cross, shed his blood so that sinners, which we all are, can have our sins forgiven, and if we'll all trust Jesus alone, we can go to heaven on the merits of Christ and not our own merits." Transcript, p. 10.

[2] Granite City Ordinance Chapter 5.78.010 states in pertinent part: It is unlawful for any person, firm or corporation to distribute indiscriminately to the public any cards, circulars, handbills, samples of merchandise or any advertisement or advertising matter whatsoever on any public street or sidewalk or other public place in the city; provided, that this section shall not be construed to prohibit the peddling or sale of any article or publication that may carry or be accompanied by advertising matter where a charge is made or a price is paid for such article or publication.

ordinance, and Horina was fined $100.00.  Plaintiff's Exhibit 3.

On February 4, 2005, Horina filed his "Plaintiffs' [sic] Verified Complaint for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Compensatory Damages" (Doc. 1).  In his complaint, Horina seeks to enjoin Granite City from enforcing the ordinance on the grounds that it unconstitutionally prohibits Horina, as well as other similarly situated third persons, from exercising their rights to freedom of speech and religion, and violates their equal protection rights under the First and Fourteenth Amendments.  Then on April 27, 2005, Horina filed his "Motion for Temporary and Preliminary Injunction" (Doc. 7) seeking, among other things, preliminary and permanent injunctions restraining Defendant from enforcing the ordinance.

The Court held a hearing regarding Horina's motion for temporary and preliminary injunction on May 20, 2005.  At the hearing, Horina testified that prior to being cited under the ordinance, he would leaflet about once a week.  Transcript, p. 7.  Horina testified that he has curtailed leafleting as a result of having received the citation, as every time he leaflets he fears being cited under the ordinance and having to go to Court and pay fines.  *Id.*  He stated that "[e]very time I [leaflet], I keep one eye out for the law so I don't get a ticket.  I am fearful."  *Id.* at 15.  Horina further stated that if the ordinance were not in place he would not be in fear of leafleting.  *Id.* at 7.  Horina also stated that the times he did leaflet since having received the citation, no one from Granite City cited him under the ordinance.  *Id.* at 10.  However, Horina did state that at least twice when he was leafleting outside the Hope Clinic, Granite City police officers approached him and told him that he could not hand out literature as it is against city ordinance.[3]  *Id.* at 11.

---

[3]   On cross-examination, Horina was uncertain whether the officers approached him and told him he could not hand out literature as it is against city ordinance at the clinic before or after his arrest in July 2003.  Transcript, p. 13.

Also testifying at the hearing was Granite City Police Chief David Ruebhausen who has served as chief for eleven years. Ruebhausen stated that the Granite City Police Officers "ben[d] over backwards to protect the protesters' First Amendment rights." *Id.* at 22. He himself has never cited anyone under the ordinance in question and has been handed literature that would fall under the ordinance. *Id.* at 23. To his knowledge, Horina was the first and only person to ever be cited under the ordinance. *Id.* at 24-25. However, Ruebhausen did state that if a person came up to a Granite City police officer upset that they had been given a piece of pro-life literature and wanted something to be done about it, a recourse available to the officer would be to issue a citation under the ordinance at issue in this matter to the person that was leafleting. *Id.* at 35. Officer Ronald Fischer, the officer that issued Horina the citation under the ordinance, also testified. He stated he issued Horina a citation under the ordinance as he felt his conduct fell under the perimeters of the ordinance. *Id.* at 41.

At the close of the hearing, Granite City argued that Horina does not have standing to challenge the ordinance. As a result, the Court set a briefing schedule regarding the issue of standing. Granite City filed its brief (Doc. 17) to which Horina responded (Doc. 23) and then Granite City replied (Doc. 25). Therefore, the Court will now address the issue of standing.

## Analysis

**1. Whether Horina has standing to seek a temporary and preliminary injunction against Granite City.**

Before the Court can address the merits of Horina's motion for temporary restraining order and preliminary injunction, the Court must consider Granite City's argument that Horina lacks standing to challenge Granite City's ordinance. Granite City asserts that Horina has not suffered an injury as a result of Granite City's ordinance in that Horina was not engaging in constitutionally

4

protected activity at the time he received the citation.  Granite City states that Horina was not cited for distributing gospel tracts, but was cited for placing the tracts on Long's vehicle without his consent and after being told to refrain from placing the tracts on the vehicle.  As well, Granite City asserts that receiving the ticket for the handbill distribution had no chilling effect on Horina's distributing gospel tracts as he continued to distribute them after being ticketed, and as such, he was not injured.

In response, Horina argues that he suffered an injury in fact when he was ticketed by Officer Fisher under the ordinance.  Horina responds that he did curtail his leafleting to a certain extent as he feared receiving future citations under the ordinance.  It is Horina's position that this amounts to a sufficient injury in fact.  In the alternative, Horina challenges the ordinance as being overbroad, making a facial challenge to the statute.

Under Article III of the Constitution, the judicial power of the United States extends only to cases and controversies.  ***Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); *Wisc. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004).**  This jurisdictional requirement ensures that the resources of the federal judiciary are not expended on advisory opinions and hypothetical disputes.  "Concepts such as standing ... assure that cases will be litigated by those having an actual stake in the outcome and that decisions will be made in an arena of real and substantial problems to be redressed by specific solutions." ***Jorman v. Veterans Admin.*, 830 F.2d 1420, 1424 (7th Cir. 1987).**

The required elements of Article III standing are: (1) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (2) a causal relation between the injury and the

5

challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and   (3) likelihood that the injury will be redressed by a favorable decision." ***Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004),** *citing Lee v. City of Chicago*, **330 F.3d 456, 468 (7th Cir. 2003).**  Horina, the party invoking federal jurisdiction, bears the burden of establishing standing.  ***Perry v. Vill. of Arlington Heights.* 186 F.3d 826, 829 (7th Cir. 1999).**

When a plaintiff raises a First Amendment challenge to a statute imposing penalties, the plaintiff satisfies the injury requirement by establishing the elements outlined in ***Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289 (1979)**.  *Babbitt* provides a more relaxed injury standard in the First Amendment context where a law's mere existence can chill speech even before the law is actually enforced.  ***Pittman v. Cole*, 267 F.3d 1269, 1283 (11th Cir. 2001).**[4]  Under *Babbitt*, a plaintiff does not have to expose him or herself to actual prosecution to show injury.  ***Commodity Trend Serv., Inc. v. Commodity Futures Trading Com'n*, 149 F.3d 679, 687 (7th Cir. 1998),** *citing* ***Babbitt*, 442 U.S. at 298.**  Under *Babbitt*, the plaintiff's fear of prosecution and self-censorship constitute the injury for standing purposes.  ***Babbitt*, 442 U.S. at 298;** *see also* ***Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 1997).**  Therefore, the plaintiff need only: (1) allege that they intend to engage in arguably constitutionally protected conduct proscribed by the statute, and (2) demonstrate that by engaging in such conduct, she would face "a credible threat of prosecution."  *Id.*  "[A] threat

---

[4]   The Court notes that *Babbitt* involved a First Amendment challenge to a criminal statute. 442 U.S. at 298.  Although the ordinance challenged in this matter is civil in nature, it authorizes significant penalties of up to $100.00 for each violation and requires the alleged violator to appear in court.  As well, the violator would face penalties for failing to pay.  Therefore, the Court finds that the ordinance at issue in the case at bar can chill speech in the same manner as a criminal statute, and as a result, finds that *Babbitt* supplies the most appropriate standard for determining justiciability.  *Cf.* ***Deida v. City of Milwaukee*, 176 F.Supp.2d 859 (E.D. Wisc. 2001)(applying the *Babbitt* test to address the standing of a plaintiff challenging a civil leafleting ordinance providing fines of up to $400.00 for each violation).**

of prosecution is credible when a plaintiff's intended conduct runs afoul of a criminal statute and the government fails to indicate affirmatively that it will *not* enforce the statute." *Id.* **(emphasis in the original),** *citing Virginia v. Am. Booksellers Ass'n, Inc.***, 484 U.S. 383, 393 (1988).**

A review of case law reveals the "credible threat of prosecution" standard to be a rather low hurdle to meet. Courts should find the threat credible when a plaintiff has a serious intent to engage in the unlawful conduct and "the government fails to indicate affirmatively that it will *not* enforce the statute." *Commodity Trend Serv.***, 149 F.3d at 687.** Disavowal of the statute requires that the state do more than say during the litigation that it might never prosecute plaintiff or that it does not intend to prosecute plaintiff. *See Babbitt***, 442 U.S. at 302;** *Citizens for Responsible Gov't State Political Action Comm. v. Davidson***, 236 F.3d 1174, 1192-93 (10th Cir. 2000).** In order to disavow the statute, the state must instead take some affirmative step against enforcement. *See Wis. Right to Life***, 138 F.3d at 1185.**

For example, in *Babbitt*, the plaintiff farm workers' union faced a credible threat of prosecution under a statute that criminalized making false statements during consumer publicity campaigns, even though the state had never prosecuted anyone under the statute, never threatened to prosecute plaintiff, and said that it might never prosecute anyone in the future. *Babbitt***, 442 U.S. at 301-02.** The court in *Babbitt* stated that because there was a reasonable probability that plaintiffs would engage in the proscribed conduct and the state had not disavowed any intention of invoking the provision at some point, the plaintiffs were "not without some reasons in fearing prosecution for violation of the ban." *Id.* **at 302.** Similarly, in *Citizens for a Responsible Government***, 236 F.3d at 1192-93**, the United States Court of Appeals for the Tenth Circuit found that the plaintiff faced a credible threat of prosecution even though the state had insisted throughout the litigation it would

7

not prosecute groups like plaintiff. The court held that the state's assertions during the litigation were not binding on future administrations. *Id.*

Applying *Babbitt's* injury test to the case at hand, the Court finds that Horina meets the requirement as set out in *Babbitt* so as to suffice the injury requirement for standing. As to the first prong of the injury test, Horina alleges that he wishes to distribute religious leaflets, but at times has refrained from doing so out of fear of being cited under Granite City's ordinance. However, as Granite City points out, at other times Horina has engaged in leafleting despite his fear, though Horina states that since being cited under the ordinance, his fear of being cited again has curtailed his leafleting. The fact that Horina engages in leafleting in spite of the ordinance is irrelevant as to the *Babbitt* test as what is important is that the ordinance in some way causes Horina to censor himself, which he has alleged. Moreover, leafleting is a form of speech arguably protected by the Free Speech Clause of the First Amendment. ***Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143 (1943).** Further, Horina's speech addressing religious matters is speech of the highest constitutional order. ***See DeBoer v. Vill. of Oak Park*, 267 F.3d 558, 570 (7th Cir. 2001), *citing Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995).** Horina's conduct of handing out religious tracts clearly falls under the ordinance in question, and as such, Horina's conduct is proscribed by the statute, satisfying the first part of *Babbitt's* injury test.

Turning to the next step of *Babbitt's* injury test, Horina faces a credible threat of prosecution because Granite City has not disavowed the ordinance. Indeed Granite City has already cited him once for violating it, demonstrating that a possibility exists that someone will be cited under the ordinance in the future. While Granite City argues that Horina never had to pay a fine under the ordinance at issue, the Court finds that argument without merit. The important question

8

for this Court is not whether Horina faced actual enforcement of the ordinance, but whether Horina faces a credible threat of prosecution.  In fact, courts have often found a credible threat of prosecution against a plaintiff who wishes to engage in constitutionally-protected conduct (such as leafleting) even though the state never directly threatened to enforce the law against the plaintiff or against anyone else for that matter.  *See, e.g., N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 8-10 (1988); *Am. Booksellers Ass'n*, 484 U.S. at 393; *Epperson v. Arkansas*, 393 U.S. 97, 98-102 (1968); *Sherman v. Cmty. Consol. School Dist. 21*, 980 F.2d 437, 441 (7th Cir. 1992); *Ark. Right to Life State Political Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998); *Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996); *Chamber of Commerce v. Fed. Election Com'n*, 69 F.3d 600, 603-04 (D.C.Cir. 1995); *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462-70 (3rd Cir. 1994).  In the case at bar, Granite City's police chief testified that if a citizen complained about having been given a leaflet, a possible recourse open to the officer would be to issue a citation under the ordinance.  This is far from firmly disavowing the ordinance.

As Granite City has not firmly disavowed the ordinance, has issued a citation under the ordinance, and in light of Horina's statements that the ordinance has curbed his leafleting out of fear of being cited under the ordinance, Horina has demonstrated a credible threat of prosecution. *Cf. Wisconsin Right to Life*, 138 F.3d at 1185 (court found plaintiff did not face a credible threat of prosecution where the state body that enforced the law had promulgated a rule stating that it would not enforce the law against groups like the plaintiff and had consistently for twenty-five years followed an Attorney General Opinion recommending against enforcement).  Therefore, Horina satisfies *Babbitt's* injury test, and as a result, Horina meets the

injury requirement necessary to demonstrate standing.

Next, Horina satisfies the second prong of the standing test because Granite City's enactment and enforcement of the ordinance has caused him to refrain from leafleting and to leaflet only at the risk of prosecution. Finally, Horina establishes the third prong of the standing test because an injunction preventing the City from enforcing the ordinance would enable him to leaflet without fear, eliminating any unjustified chill. *Cf. Deida v. City of Milwaukee*, **176 F.Supp.2d 859 (E.D. Wisc. 2001)(finding the plaintiff had standing to challenge a city ordinance prohibiting leafleting).** Therefore, the Court **FINDS** that Horina has standing to challenge Granite City's ordinance.

**2. Whether Horina has met the requirements for a preliminary injunction.**

As the Court finds that Horina has standing, it needs to turn to the merits of whether Horina is entitled to a preliminary injunction. To obtain a preliminary injunction, Horina must show: (1) a reasonable likelihood of success on the merits; (2) that there is no adequate remedy at law; (3) that Horina will suffer irreparable harm if an injunction is not issued; (4) that the threatened injury he faces outweighs the injury Granite City will suffer if the injunction is granted; and (5) that an injunction is in the public interest. *JAK Prods., Inc. v. Wiza*, **986 F.2d 1080, 1084 (7th Cir. 1993).** "Although in theory these elements are distinct, in the First Amendment context they are essentially reduced to the question of whether plaintiff is likely to succeed on the merits." *Wil-Kar, Inc. v. Vill. of Germantown*, **153 F.Supp.2d 982, 987 (E.D.Wis. 2001).** As stated in *Wil-Kar*, "[t]his is because the loss of First Amendment freedoms is presumed to constitute irreparable harm, and irreparable injury establishes that there is no adequate remedy at law. Further, because governmental compliance with the First Amendment always serves the common good, the public

interest also turns on the merits." *Id.*

**b.  Whether Horina is likely to succeed on the merits.**

As Horina has addressed its likelihood of success on the merits in its previous pleadings to the Court, whereas Granite City has only addressed the issue of standing, the Court **SETS** the following briefing schedule as to the merits of Horina's motion: (1) Granite City may file a response brief to the merits of Horina's motion **on or before Monday, August 8, 2005**, and (2) Horina may file a reply brief **on or before Friday, August 12, 2005**.

The Court warns the parties that: (1) they are not to attack the Court's findings as to standing, that issue is firmly decided; (2) no extension will be given and no late briefs will be accepted; and (3) the Court will only consider the response brief requested from Granite City and the reply brief requested from Horina, no other briefs will be accepted.

**IT IS SO ORDERED.**

**DATED this 1st day of August, 2005.**

> **s/ Michael J. Reagan**
> **MICHAEL J. REAGAN**
> **United States District Judge**

11