## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DONALD N. HORINA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **05-cv-0079-MJR** |
| | ) | |
| **CITY OF GRANITE CITY, ILLINOIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM and ORDER

**REAGAN, District Judge:**

On April 27, 2005, Plaintiff Donald N. Horina filed a "Motion for Temporary and Preliminary Injunction" (Doc. 7) against Defendant City of Granite City, Illinois (hereinafter "Granite City"). In his motion, Horina moves for temporary and preliminary injunction against Granite City prohibiting Granite City from enforcing its ordinance, Chapter 5.78.010, which in part, makes it unlawful to distribute handbills on any public place in Granite City. Horina argues that the ordinance violates both his and other third persons' First and Fourteenth Amendment rights.

A hearing was held on this matter on May 20, 2005, where testimony was heard, evidence was presented, and arguments were made. Because all parties received notice of and participated in the May 20, 2005 hearing, the Court construes the instant motion as solely seeking preliminary injunction pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 65(a)** and denies as moot the motion for a temporary restraining order.

At the hearing, Granite City challenged whether Horina has standing to seek an injunction against Granite City. As a result, the Court had the parties brief the issue (*see* Docs. 17,

23, and 25) and entered an Order on August 1, 2005 finding that Horina has standing to challenge

the ordinance (Doc. 27).  In its August 1st Order, the Court set a briefing schedule as to the merits

of Horina's motion.  Accordingly, Granite City filed its response brief at Doc. 33 to which Horina

replied at Doc. 34.   This matter being fully briefed as to the merits of Horina's motion for

preliminary injunction, the Court begins its analysis with a recitation of the factual background and

procedural history as detailed in its August 1st Order.

### Factual Background and Procedural History

Horina is a Christian who feels obligated to tell others about their need to be "born

again."   He accomplishes his purpose primarily through public distribution of free religious

literature, also known as gospel tracts.[1]  Horina offers the tracts on public sidewalks and places them

on automobile windshields in a manner that does not impede pedestrian traffic.

On July 26, 2003, Horina was distributing gospel tracts on a public sidewalk in

Granite City, Illinois on the 2000 block of Iowa Avenue, which is a sidewalk located in front of

Hope Clinic.  Hope Clinic is a medical facility, that among other procedures, performs abortions.

Horina placed a gospel tract through the open window of a vehicle belonging to Nathaniel Lang

("Lang"), a security guard employed at Hope Clinic.  Lang had repeatedly asked Horina not to put

anything on or in his car.  As a result of Horina's placing the gospel tract in the car, Lang contacted

the Granite City Police Department.  Granite City Police Officer Ronald Fisher issued a ticket to

---

[1]     Horina testified his religious tracts carry the following message: "Jesus loves the sinners, Jesus died on the cross, shed his blood so that sinners, which we all are, can have our sins forgiven, and if we'll all trust Jesus alone, we can go to heaven on the merits of Christ and not our own merits."  Transcript, p. 10.

Horina for violating Chapter 5.78.010[2], the Handbill Distribution Ordinance (hereinafter "the ordinance").

On April 19, 2004, Horina appeared at an administrative hearing regarding the ticket. At the hearing the citation was amended to a charge of trespass to vehicle under a different city ordinance, and Horina was fined $100.00.  Plaintiff's Exhibit 3.

On February 4, 2005, Horina filed his "Plaintiffs' [sic] Verified Complaint for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Compensatory Damages" (Doc. 1).  In his complaint, Horina seeks to enjoin Granite City from enforcing the ordinance on the grounds that it unconstitutionally prohibits Horina, as well as other similarly situated third persons, from exercising their rights to freedom of speech and religion, and violates their equal protection rights under the First and Fourteenth Amendments.  Then on April 27, 2005, Horina filed his "Motion for Temporary and Preliminary Injunction" (Doc. 7) seeking, among other things, preliminary and permanent injunctions restraining Defendant from enforcing the ordinance.

The Court held a hearing regarding Horina's motion for temporary and preliminary injunction on May 20, 2005.  At the hearing, Horina testified that prior to being cited under the ordinance, he would leaflet about once a week.  Transcript, p. 7.  Horina testified that he has curtailed leafleting as a result of having received the citation, as every time he leaflets he fears being cited under the ordinance and having to go to Court and pay fines.  *Id.*  He stated that "[e]very time

---

[2]      Granite City Ordinance Chapter 5.78.010 states in pertinent part: "It is unlawful for any person, firm or corporation to distribute indiscriminately to the public any cards, circulars, handbills, samples of merchandise or any advertisement or advertising matter whatsoever on any public street or sidewalk or other public place in the city; provided, that this section shall not be construed to prohibit the peddling or sale of any article or publication that may carry or be accompanied by advertising matter where a charge is made or a price is paid for such article or publication."

I [leaflet], I keep one eye out for the law so I don't get a ticket.  I am fearful."  *Id.* at 15.  Horina

further stated that if the ordinance were not in place he would not be in fear of leafleting.  *Id.* at 7.

Horina also stated that the times he did leaflet since having received the citation, no one from

Granite City cited him under the ordinance.  *Id.* at 10.  However, Horina did state that at least twice

when he was leafleting outside the Hope Clinic, Granite City police officers approached him and

told him that he could not hand out literature as it is against city ordinance.[3]  *Id.* at 11.

   Also testifying at the hearing was Granite City Police Chief David Ruebhausen who

has served as chief for eleven years.  Ruebhausen stated that the Granite City Police Officers "ben[d]

over backwards to protect the protesters' First Amendment rights."  *Id.* at 22.  Ruebhausen has never

cited anyone under the ordinance in question and has been handed literature that would fall under

the ordinance.  *Id.* at 23.  To his knowledge, Horina was the first and only person to ever be cited

under the ordinance.  *Id.* at 24-25.  However, Ruebhausen did state that if a person came up to a

Granite City police officer upset that they had been given a piece of pro-life literature and wanted

something to be done about it, a recourse available to the officer would be to issue a citation under

the ordinance at issue in this matter, to the person that was leafleting.  *Id.* at 35.  Officer Ronald

Fischer, the officer that issued Horina the citation under the ordinance, also testified.  He stated he

issued Horina a citation under the ordinance as he felt his conduct fell under the perimeters of the

ordinance.  *Id.* at 41.

   At the close of the hearing, Granite City argued that Horina does not have standing

to challenge the ordinance because the earlier charge against him was resolved and there are no

---

   [3]  On cross-examination, Horina was uncertain whether the officers approached him and
told him he could not hand out literature as it is against city ordinance at the clinic before
or after his arrest in July 2003.  Transcript, p. 13.

pending charges under the ordinance against him.  As a result, the Court set a briefing schedule

regarding the issue of standing.  Granite City filed its brief (Doc. 17) to which Horina responded

(Doc. 23) and then Granite City replied (Doc. 25).  On August 1, 2005, the Court entered its Order

finding that Horina has standing to seek a temporary and preliminary injunction against Granite City

(Doc. 27).   In that same Order, the Court set a briefing schedule as to the merits of Horina's motion.

Accordingly, Granite City filed its response brief at Doc. 33 to which Horina replied at Doc. 34.

This matter being fully briefed, the Court finds as follows.

## Standard for a Preliminary Injunction

To obtain a preliminary injunction, Horina must show: (1) a reasonable likelihood

of success on the merits; (2) that there is no adequate remedy at law; (3) that Horina will suffer

irreparable harm if an injunction is not issued; (4) that the threatened injury he faces outweighs the

injury Granite City will suffer if the injunction is granted; and (5) that an injunction is in the public

interest.  *JAK Prods., Inc. v. Wiza*, **986 F.2d 1080, 1084 (7th Cir. 1993).**  If the movant can meet

this threshold burden, then the inquiry becomes a "sliding scale analysis" where these factors are

weighed against one another.  *See AM General Corp. v. DaimlerChrysler Corp.*, **311 F.3d 796, 804**

**(7th Cir. 2002).**

When a party seeks a preliminary injunction on the basis of a potential First

Amendment violation, the likelihood of success on the merits will often be the determinative factor.

*Joelner v. Village of Washington Park, Illinois*, **378 F.3d 613, 620 (7th Cir. 2004).**  "The loss of

First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

injury," and money damages are therefore inadequate.  *See Elrod v. Burns*, **427 U.S. 347, 373**

**(1976).**  As well, there can be no irreparable harm to a municipality when it is prevented from

enforcing an unconstitutional statute because "it is always in the public interest to protect First Amendment liberties." ***Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).** Therefore, if Horina can show a likelihood of success on the merits, the Court will balance the harms to the parties and the public interest. ***See Joelner*, 378 F.3d at 627-29.**

## Analysis

**1. Whether Horina's motion is moot in light of Granite City's counsel's representations to this Court that it will not enforce the ordinance until there is a final disposition of this case.**

Before the Court can address the merits of Horina's motion for preliminary injunction, the Court must address Granite City's arguments that Horina's motion for preliminary injunction is moot in light of Granite City's counsel's representations to the Court in its response brief at Doc. 33 that until there is a final disposition of this case, or until the ordinance is repealed, it will not enforce the ordinance. Horina responds that his motion is not moot in spite of these representations. A defendant carries a heavy burden when it argues that a plaintiff's claims are moot, ***see Kikumura v. Turner*, 28 F.3d 592, 597 (7th Cir. 1994)**, and this Court is not convinced by Granite City's arguments.

As this Court *previously* addressed in its August 1st Order, disavowal of a statute requires that the state do more than say during the litigation that it might never prosecute plaintiff or that it does not intend to prosecute plaintiff. ***See Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (7th Cir. 1979); *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1192-93 (10th Cir. 2000).** In order to disavow the statute, the state must instead take some affirmative step against enforcement. ***See Wisconsin Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1185 (7th Cir. 1998)(court found plaintiff did not face a credible threat of prosecution where the state body that enforced the law had promulgated a rule**

6

**stating that it would not enforce the law against groups like the plaintiff and had consistently for twenty-five years followed an Attorney General Opinion recommending against enforcement).**

While the Court made those findings in its discussion as to whether Horina faced a credible threat of prosecution in order to confer standing on him to bring the instant motion, they are analogously applicable to the discussion of whether Granite City's current representations make the motion moot.  This is because the United States Court of Appeals for the Seventh Circuit has "long recognized ... that a defendant cannot moot a claim simply by voluntarily ceasing behavior when it is free to resume that behavior at any time." ***See Edwards v. Illinois Bd. of Admissions to Bar*, 261 F.3d 723 (7th Cir. 2001); *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 747 (7th Cir. 1999); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998); *Jones v. Sullivan*, 938 F.2d 801, 807 (7th Cir. 1991).**  For instance, in *Citizens for a Responsible Government*, **236 F.3d at 1192-93**, the United States Court of Appeals for the Tenth Circuit found that the plaintiff therein faced a credible threat of prosecution even though the state had insisted throughout the litigation it would not prosecute groups like plaintiff.  The court held that the state's assertions during the litigation were not binding on future administrations.  ***Id.***   This Court finds the same to be true in the case at bar. Accordingly, the Court finds that Horina's claims are not moot even in light of Granite City's latest representations to the Court that it will not enforce the ordinance.

**2.  Whether Horina is likely to succeed on the merits of his motion.**

The Court must decide, in the context of a preliminary injunction, whether a municipality can prohibit leafleting in all public places in its borders.  Horina argues that he will succeed on the merits as: (1) the ordinance is unconstitutionally overbroad, and (2) the ordinance

7

is unconstitutional as applied to him.  The difference between the two arguments, is that an "as-applied" challenge consists of a challenge to a regulation's application only to the party before the court.  *City of Lakewood v. Plain Dealer Publ'g Co.*, **486 U.S. 750, 758-59 (1998).**  If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable.  *Id.*  However, if an overbroad challenge is successful, the statute may not be applied to anyone.  *Id.*  The Court will begin its analysis as to whether the ordinance is unconstitutionally as applied to Horina.

**2a.  Whether the ordinance is unconstitutional as applied to Horina.**

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or of the press."  U.S. Const. Amend. I.  The United States Supreme Court recognized in *Gitlow v. New York*, **268 U.S. 652, 666 (1925)**, that this provision also applies to state governments under the Fourteenth Amendment.  Horina wants to pass out his religious leaflets free of fear that he will be cited under the city ordinance.  Leafleting is a form of speech arguably protected by the Free Speech Clause of the First Amendment.  *Martin v. City of Struthers*, **319 U.S. 141, 143 (1943).**  Further, Horina's speech addressing religious matters is speech of the highest constitutional order.  *See DeBoer v. Vill. of Oak Park*, **267 F.3d 558, 570 (7th Cir. 2001)**, *citing Capitol Square Review & Advisory Bd. v. Pinette*, **515 U.S. 753, 760 (1995).**

Important to the standard or review in this matter, the ordinance in question prohibits leafleting on any public street or sidewalk or other public place in Granite City.  "Public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum."  *Frisby v. Schultz*, **487 U.S. 474, 480 (1988).**  When regulating First Amendment activity in a public forum, the government has a difficult burden to carry.  *Perry Educ. Ass'n v. Perry Local*

***Educators' Ass'n*, 460 U.S. 37, 45 (1983).**  For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.  ***Id.* at 44, *citing Carey v. Brown*, 447 U.S. 455, 461 (1980).**  The state may also enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.  ***Id., citing United States Postal Service v. Council of Greenburgh*, 453 U.S. 114 (1981).**  Therefore, this Court must determine whether the ordinance at issue here is content-based or content-neutral so as to apply the proper level of scrutiny.

Content-based regulations are presumptively invalid under the First Amendment and subject to strict scrutiny, while content-neutral restrictions receive lesser scrutiny.  ***Schultz v. City of Cumberland*, 228 F.3d 831, 840 (7th Cir. 2000).**  Content-based regulations are defined as those that distinguish favored from disfavored speech based on the ideas expressed.  ***Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994).**  If it is necessary to look at the content of the speech in question to determine whether the speaker violated the regulation, then the regulation is content-based.  ***Gresham v. Peterson*, 225 F.3d 899, 905 (7th Cir. 2000).**  For instance, "a general ban on speech in the vicinity of a school is content-neutral ... whereas an analogous ban on speech containing an exemption for speech relating to labor disputes is content-based.  The former regulation requires no consideration to content before applying the ban, while the latter regulation requires consideration of whether the speech in question refers to a labor dispute before it is possible to determine if the regulation applies."  ***Schultz*, 228 F.3d at 840-41.**

Horina argues that the ordinance is content-based since it requires a determination as to whether the literature being distributed falls within the category of "peddling" or "advertising"

as the ordinance allows for the peddling or sale of any item that contains or is accompanied by an advertisement.  However, the Court finds that this exemption is not enough to automatically qualify the ordinance as being content-based.

Horina alleges that the ordinance is not content-neutral as it permits the sale of materials having advertisements.  The Court construes this exception is allowing for the sale of newspaper or magazine-like materials.  Similar to the Seventh Circuit's decision in *Weinberg v. City of Chicago*, **310 F.3d 1029 (7th Cir. 2002)**, the Court finds that Horina's argument fails for several reasons.  In *Weinberg*, the plaintiff tried to argue that the ordinance he was challenging, that prohibited the peddling of books within a 1000 feet of the United Center, was not content-neutral because it made a distinction between peddling books and peddling newspapers.  In that case, the Seventh Circuit found that the because the City of Chicago did not adopt the regulation of speech "because of disagreement with the message [the speech] conveys," the ordinance was content neutral.  *Id.* at 1037, *citing Ward*, 491 U.S. at 791.  The Seventh Circuit stated that "the ordinance is wholly indifferent to any specific message or viewpoint.  These regulations do not single out a certain message for different treatment."  *Id.*, *citing Schultz*, **228 F.3d at 840.**

Similarly, in the case at bar, the leafleting ordinance does not require one to consider the content of the leaflet, merely whether it is being handed out for free, and if not, whether it involves advertisements.  Since Granite City treats those handing out any type of material for free, regardless of its content, equally, the Court cannot find that the ordinance is content-based. The fact that the ordinance adversely affects those handing out leaflets while not affecting those peddling materials with advertisements, is of little importance, as "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some

speakers or messages but not others." ***Ward*, 491 U.S. at 791.**  What matters to the Court is that the ordinance does not require one to consider the content of the speech, merely its format.  Since the ordinance treats anyone distributing leaflets without advertisements, regardless of its content, equally, this Court cannot find that the ordinance is content-based.  Therefore, the Court finds that the ordinance is content-neutral.

As the Court finds that the ordinance is content-neutral, the Court must now determine whether Horina has a likelihood of success in proving that the ordinance is not a content neutral time, place and manner regulation, that is narrowly tailored to serve a significant government interest, and leaves open ample alternative channels of communication.  ***Id.*, *citing United States Postal Service*, 453 U.S. at 114.**  Turning to whether the ordinance is narrowly tailored to achieve a significant governmental interest, the Court finds that there is no doubt a city has a legitimate interest in protecting its citizens and ensuring that its streets and sidewalks are safe for all citizens.  ***Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 683-85 (1992).**  A city's interest in maintaining the flow of pedestrian traffic is intertwined with the concern for public safety.  ***See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 650-51 (1981).**  However, Granite City must be able to justify the necessity of the ordinance.  In the context of a First Amendment challenge under the narrowly tailored test, Granite City has the burden of showing that there is evidence supporting its proffered justification.  ***DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 829 (7th Cir. 1999).**

However, neither at the hearing nor in its pleadings submitted after the Court directed the parties to the brief the merits of Horina's preliminary injunction motion, did Granite City offer justification for the necessity of the ordinance.  While the Court assumes that some sort of safety and

congestion concerns motivated Granite City's invocation of the ordinance, Granite City "cannot

blindly invoke safety and congestion concerns without more."[4]  ***Weinberg*, 310 F.3d at 1038.**

However, Granite City has offered no empirical studies, no police records, no reported injuries, nor

evidence of any lawsuits filed as a result of leafleting in Granite City.  The Court finds that only

speculation exists as to the justification of this ordinance, which is problematic, as the United States

Supreme Court has stated that it has "never accepted mere conjecture as adequate to carry a First

Amendment burden."  ***Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 392 (2000).**

Moreover, "[u]sing a speech restrictive blanket with little or no factual justification flies in the face

of preserving one of our most cherished rights."  ***Weinberg*, 310 F.3d at 1039.**   Accordingly, the

Court finds that at this stage Granite City has failed to show the ordinance advances a significant

governmental interest.[5]  ***Cf. Wateska v. Illinois Public Action Council*, 796 F.2d 1547 (7th Cir.

1986),** *aff'd***, 479 U.S. 1048 (1987).**

Having found that Granite City has failed to show the ordinance advances a

significant governmental interest, discussion as to whether the ordinance is a reasonable time, place

and manner restriction is not necessary for purposes of issuing a preliminary injunction.  However,

the Court also finds that at this stage in the proceedings it is unlikely that Granite City has narrowly

---

[4]   As well, the Court notes that the ordinance bans leafleting, but permits such activities as newspaper and magazine sales, peddling, street performances, and charitable solicitations.  Any possible argument by Granite City that the ordinance is to advance the city's interest in maintaining traffic congestion is without merit based on its inconsistent approach.  ***Cf. Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150 (2002).**

[5]   The Court notes that most of the testimony at the May 20, 2005 hearing focused on those leafleting near the Hope Clinic.  The Court finds it noteworthy that Granite City Police Chief Ruebhausen testified at the hearing that the protestors leafleting at Hope Clinic, which included Horina, were always peaceful and harmless.

tailored the leafleting ordinance.  A regulation is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation." **Ward, 491 U.S. at 799.**  To satisfy the narrowly tailored test, an ordinance need not be the least restrictive method for achieving the government's goal. **Id. at 797.**  Nevertheless, while a regulation does not have to be a perfect fit for the government's needs, it cannot substantially burden more speech than necessary. **Id. at 800.**

The ordinance completely prohibits all leafleting in any public place in Granite City. This ordinance leaves no alternative means available to those seeking to leaflet.  There is no middle ground available, such as a restriction of a certain distance from highly congested areas or from leafleting on certain narrow sidewalks.  Such alternatives would be less restrictive, less encompassing and less intrusive on First Amendment rights. **See Weinberg, 310 F.3d at 1040.**

As well, the Court finds as highly instructive **Krantz v. City of Fort Smith, 160 F.3d 1214, 1222 (8th Cir. 1998)**.  In *Krantz*, the United States Court of Appeals for the Eighth Circuit found that a content-neutral law prohibiting leafleting on vehicles was not narrowly tailored to serve a substantial state interest.  The Eighth Circuit found that the regulation was not narrowly tailored because instead of permitting automobile owners who were interested in receiving messages from doing so and allowing uninterested owners to place the equivalent of a no-trespassing sign on their dashboards, the ordinance simply prohibited all leafleting. **Id.**  As a result, the Court found that the law restricted more speech than was necessary.  Similarly, Granite City's complete prohibition on leafleting in all public areas in Granite City is too great of a restriction that "cannot be reconciled with our First Amendment rights." **See Cox v. Louisiana, 379 U.S. 559 (1965).**  Accordingly, the Court finds at this stage in the proceeding for purposes of issuing a preliminary injunction, the

ordinance burdens more speech than is necessary and is not sufficiently narrow to promote its legitimate interest.

Final inquiry in determining whether Granite City's ordinance is a reasonable time, place and manner restriction is whether the law leaves open ample alternative channels.  Again, while the Court need not decide this issue, it seems unlikely that Granite City's ordinance leaves open ample alternative channels.  An adequate alternative does not have to be the speaker's first choice.  *Heffron*, **452 U.S. at 647.**  Yet an alternative is not adequate if it "foreclose[s] a speaker's ability to reach one audience even if it allows the speaker to reach other groups."  *Gresham v. Peterson*, **225 F.3d 899, 907.**

In the case at bar, Horina is prevented from leafleting in any public forum in Granite City.  While Granite City could argue that Horina could post his message via other channels of communication, such as the internet, the fact that Horina can communicate his message elsewhere does not end this Court's analysis if the intended message is rendered useless or is seriously burdened.  *See City of Ladue v. Gilleo*, **512 U.S. 43, 56-57 (1994).**  Leafleting is an inexpensive, unobtrusive, peaceful manner of disseminating information.  It allows those not interested to simply not take a leaflet and for others to take one, and read the information.  The audience Horina wants to reach are those using the abortion services of the Hope Clinic.  As the Seventh Circuit stated in *Weinberg*, "an alternative is not ample if the speaker is not permitted to reach his intended audience."  **310 F.3d at 1042.**  This Court is not prepared to say that the alternatives available to Horina are ample, as the Court believes his ability to communicate effectively is likely threatened.  *See City Council of Los Angeles v. Taxpayers for Vincent*, **466 U.S. 789, 812 (1984);** *Schneider*, **308 U.S. at 162-63;** *American Civil Liberties Union of Nevada v. City of Las Vegas*, **333 F.3d**

14

**1092, 1106 (9th Cir. 2003).**  Accordingly, the Court finds that Horina is likely to succeed on the merits as to demonstrating that the ordinance is not a reasonable time, place and manner restriction and is unconstitutional as applied to Horina.

**2b.  Whether the ordinance is unconstitutionally overbroad.**

Horina also challenges the ordinance contending that it is unconstitutionally overbroad.  Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face "because it also threatens others not before the court – those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid."  *Brockett v. Spokane Arcades, Inc.*, **472 U.S. 491, 503 (1985).**   A statute may be invalidated on its face, however, only if the overbreadth is "substantial."  *City of Houston v. Hill*, **482 U.S. 451, 458-59 (1987).**  The requirement that the overbreadth be substantial arose from our recognition that application of the overbreadth doctrine is, "manifestly, strong medicine," *Broadrick v. Oklahoma*, **413 U.S. 601, 613 (1973)**, and that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds."  *City Council of Los Angeles*, **466 U.S. at 801.**

In addition to the findings made above in the discussion of the ordinance as it was applied to Horina, on its face, the ordinance appears to be overbroad as it effectively prohibits all leafleting in Granite City of any material that is free of charge.  The ordinance broadly prohibits any distribution of any cards, circulars, handbills, samples of merchandise or any advertising matter whatsoever.  As a result, the ordinance, as written, manifestly applies to any pamphlets, magazines

15

and periodicals that are being distributed free of charge.   The ordinance is not limited to materials

that are obscene or offensive to public morals or that advocate for unlawful conduct.   In the case at

bar, there is no suggestion that Horina was passing out materials of this nature.   Instead, Horina was

ticketed under the ordinance for handing out religious leaflets, speech which is protected and of the

highest constitutional order.   ***See Martin*, 319 U.S. at 143 (leafleting is a form of speech arguably**

**protected by the Free Speech Clause of the First Amendment).  *See also DeBoer*, 267 F.3d at**

**570, *citing Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995)(speech**

**addressing religious matters is speech of the highest constitutional order).**   The ordinance

clearly includes an entire spectrum of protected First Amendment expression, not only leafleting and

religious speech, but would apply to anyone who "wishes to present his views on political, social

or economic questions" or advocate for any cause.  *Schneider v. State of New Jersey*, 308 U.S. 147,

**163 (1939); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995)(describing**

**the long-standing practice in this country of anonymous pamphleteering).**

As well, the ordinance appears to be overbroad as it is comprehensive with respect

to the method of distribution.   It covers anyone who "indiscriminately distributes" materials.   As a

result, there is no restriction in the ordinance's application to time or place.   The ordinance "is not

limited to ways which might be regarded as inconsistent with the maintenance of public order, or

as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the

streets." *Lovell v. City of Griffin*, 303 U.S. 444, 451 (1938).   Consequently, the ordinance prohibits

the distribution of all materials that are not for sale at any time, at any place, and in any manner.

Finally, the Court recognizes that overbreadth challenges are only successful when

a limiting construction cannot be used to narrow the challenged statute and "remove the seeming

16

threat or deterrence to constitutionally protected speech." ***Broadrick*, 413 U.S. at 613.** However, at this stage in the proceeding, the Court does not believe the ordinance is susceptible to a narrowing construction. The ordinance sweeps into it constitutionally protected First Amendment speech, including political materials. It also sweeps into its coverage all public areas in Granite City, it does not limit the time or place of distribution. Given the broad scope of this ordinance's application, the Court believes, at this stage in the proceedings, that limiting the ordinance would require a complete overhaul of the ordinance, a task the Court finds is better left to Granite City. ***See Kraimer v. City of Schofield*, 342 F.Supp.2d 807, 823 (E.D. Wisc. 2005).**

Accordingly, the Court finds that Horina is likely to succeed in proving that the ordinance is invalid on its face. Whatever Granite City's motive was in creating the ordinance, its character is such that it strikes at the very foundation of the freedom of speech and the right to leaflet. As the United States Supreme Court states in *Lovell*, "[Pamphlets and leaflets] indeed have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest." **303 U.S. at 452.** Consequently, the Court concludes the ordinance is overbroad.

**3. Balancing the harm to the parties and the public interest.**

As to Horina's irreparable injury, as explained earlier, the United States Supreme Court has stated that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." ***Elrod*, 427 U.S. at 373.** Horina has testified that he has curtailed his leafleting in fear of being cited under the ordinance again. Yet on the other hand, Granite City has offered no evidence of the harm that would befall it if an injunction were put in place preventing them from enforcing the ordinance against Horina or any other person. In fact,

Granite City offered to abstain from enforcing the ordinance until this matter reached its conclusion, leading this Court to believe that no harm would befall Granite City if an injunction were granted. Moreover, the public interest weighs in favor of granting the injunction.  *See Newsom v. Albemarle County School Bd.***, 354 F.3d 249, 261 (4th Cir. 2003)("Surely, upholding constitutional rights serves the public interest").**  *Cf. Homans v. City of Albuquerque***, 264 F.3d 1240, 1244 (10th Cir. 2001)("[W]e believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression.")** Accordingly the Court finds the balance of harm to the parties weighs in favor of issuing the injunction.

## Conclusion

The Court hereby **GRANTS** *in part* and **DENIES** *in part* Plaintiff Donald N. Horina's "Motion for Temporary and Preliminary Injunction" (Doc. 7).  The Court **DENIES** the motion in that as all parties received notice of and participated in the May 20, 2005 hearing on the motion for temporary and preliminary injunction, the Court denies as moot the request for temporary injunction.  The Court **GRANTS** the motion in that it issues a preliminary injunction preventing Defendant City of Granite City, Illinois from enforcing Granite City Ordinance Chapter 5.78.010 against Plaintiff Donald H. Horina or any other person(s) until this litigation is resolved.

Therefore, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 65(c),** the Court **DIRECTS** Donald H. Horina to post a bond of One Thousand Dollars ($1,000.00) with the Clerk of this Court **on or before Thursday, September 22, 2005** to cover taxable costs in the event Granite City prevails.

Additionally, the Court hereby **SETS** an in-court status conference for **Friday,**

18

**September 23, 2005 at 3:30 p.m.** to discuss the further pretrial proceedings of this case in light of

the Court's rulings in this Order.

        **IT IS SO ORDERED.**

        **DATED this 29th day of August, 2005.**

                                  **s/ Michael J. Reagan**
                                  **MICHAEL J. REAGAN**
                                  **United States District Judge**