IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD N. HORINA,             ) | |
|                                                      ) | |
|         Plaintiff,                       ) | |
|                                                      ) | |
| vs.                                            ) | 05-cv-0079-MJR |
|                                                      ) | |
| CITY OF GRANITE CITY, ILLINOIS, ) | |
|                                                      ) | |
|         Defendant.                    ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

Before this Court is plaintiff Donald Horina's amended motion for preliminary injunction (Doc. 53).

**Factual Background and Procedural History:**

Horina is a Christian who feels obligated to tell others about their need to be "born again." He accomplishes his purpose primarily through public distribution of free religious literature, also known as gospel tracts. Horina offers the tracts on public sidewalks and places them on automobile windshields in a manner that does not impede pedestrian traffic.

On July 26, 2003, while on a public sidewalk in Granite City, Illinois, Horina placed a gospel tract through the open window of a vehicle, resulting in a Granite City police officer issuing a ticket to Horina for violating Granite City Ordinance Chapter 5.78.010,[1] the "Handbill Distribution

---

[1] Ordinance 5.78.010 stated in pertinent part: "It is unlawful for any person, firm or corporation to distribute indiscriminately to the public any cards, circulars, handbills, samples of merchandise or any advertisement or advertising matter whatsoever on any public street or sidewalk or other public place in the city; provided, that this section shall not be construed to prohibit the peddling or sale of any article or publication that may

Ordinance" (hereinafter "Ordinance 5.78.010").

On April 19, 2004, Horina appeared at an administrative hearing regarding the ticket. At the hearing, the citation was amended to a charge of trespass to vehicle under a different city ordinance, and Horina was fined $100.00.

On February 4, 2005, Horina initiated this case by filing a complaint for declaratory judgment, preliminary and permanent injunctive relief and compensatory damages (Doc. 1). He sought to enjoin Granite City from enforcing Ordinance 5.78.010 on the grounds that it unconstitutionally prohibited Horina and similarly-situated third persons from exercising their rights to freedom of speech and religion, and violated their equal protection rights under the First and Fourteenth Amendments (*See* Doc. 1). In furtherance of this objective, on April 27, 2005, Horina filed a motion for a temporary and preliminary injunction (Doc. 7) seeking, among other things, preliminary and permanent injunctions restraining Granite City from enforcing Ordinance 5.78.010. On May 20, 2005, this Court held a hearing on that motion and, following that hearing, granted Horina's request for a preliminary injunction prohibiting Granite City from enforcing Ordinance 5.78.010 (*See* Doc. 35).

In response, on November 15, 2005, Granite City repealed Ordinance 5.78.010 and established Granite City Ordinance 7861, entitled "An Ordinance Repealing the Existing Handbill and Leafleting Ordinance and Prohibiting Certain Leafleting" (hereinafter "Ordinance 7861")(*See* Doc. 56, Ex. 1). According to the preamble of Ordinance 7861, the purpose of the ordinance is to protect Granite City residents' "right to free speech, and the desire to be free of unwanted intrusion,

---

carry or be accompanied by advertising matter where a charge is made or a price is paid for such article or publication."

trespass, harassment, and litter ...." *Id.* Apparently to further this objective, Ordinance 7861 enumerates several restrictions on the depositing, distributing, or selling of "handbills," which the ordinance defines as "any leaflet, pamphlet, brochure, notice, handout, circular, card, photograph, drawing, or advertisement, printed on paper or on cardboard." *Id.*

On February 6, 2006, dissatisfied with Granite City's revisions to its handbilling restrictions, Horina filed the amended motion for preliminary injunction that is presently before this Court (Doc. 53). Therein, Horina asserts that Ordinance 7861, like its predecessor, is unconstitutional. Specifically, Horina asserts that Ordinance 7861 is vague and overbroad, and curtails more speech than necessary to achieve any compelling, significant, or substantial governmental interest. Horina further argues that Granite City's enforcement of Ordinance 7861 causes him to be irreparably harmed by chilling his exercise of First Amendment rights to freedom of speech and religion.

Granite City filed its response (Doc. 56, supplemented at Doc. 58), and Horina filed his reply (Doc. 59). On March 24, 2006, this Court held a hearing on this matter at which the parties presented evidence and argument regarding the constitutionality of Ordinance 7861. These issues being fully briefed and argued, the Court **GRANTS** Horina's motion for preliminary injunction in regards to Ordinance 7861 for the reasons that follow.

## Analysis:

To obtain a preliminary injunction, the movant must show, and has the burden of proving, each of the following substantive elements: (1) a reasonable likelihood of success on the merits of the underlying claim; (2) that there is no adequate remedy at law; and (3) that the movant will suffer irreparable harm if the injunction is not granted. ***Ty, Inc. v. Jones Group, Inc.*, 237**

**F.3d 891, 895 (7th Cir. 2001).** If, and only if, the movant meets this threshold burden, the Court must consider two additional elements before issuing a preliminary injunction. The Court must balance the harms to the respective parties, with the required balance in favor of the movant being inversely proportional to the movant's likelihood of success on the merits; and the Court must consider the public interest by weighing the effect that granting the injunction will have on non-parties. *Ferrell v. U.S. Dep't of Housing & Urban Dev.*, **186 F.3d 805, 811 (7th Cir. 1999);** *Licini Italia Co. v. Grappolini*, **288 F.3d 1035, 1038 (7th Cir. 2002).**

Regarding the three elements that constitute Horina's threshold burden, when a party seeks a preliminary injunction on the basis of a potential *First Amendment* violation, the first element – the likelihood of success on the merits – often will be the determinative factor. *Joelner v. Village of Washington Park, Illinois*, **378 F.3d 613, 620 (7th Cir. 2004).** This is because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," and money damages are therefore inadequate. *See Elrod v. Burns*, **427 U.S. 347, 373 (1976).** Accordingly, if Horina can show a likelihood of success on the merits, this Court may turn directly to the second half of the overall analysis. *See Joelner*, **378 F.3d at 627-29.**

*Horina's Likelihood of Success on the Merits*

Horina argues that he will succeed on the merits because the ordinance is facially unconstitutional and unconstitutional as applied to him. An "as applied" challenge consists of a challenge to a regulation's application only to the party before the court. *City of Lakewood v. Plain Dealer Publ'g Co.*, **486 U.S. 750, 758-59 (1998).** If a statute is found to be unconstitutional "as applied," the statute may not be applied to the challenger, but is otherwise enforceable. *Id.* If a statute is found to be *facially* unconstitutional, on the other hand, the statute may not be applied to

*anyone*. *Id.* If this is the case, an "as applied" challenge becomes irrelevant. Accordingly, the Court begins its analysis by determining whether Horina is likely to succeed on his argument that the statute is facially unconstitutional.

*Horina's Claim that Ordinance 7861 is Facially Unconstitutional*

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or of the press." **U.S. CONST. AMEND. I**. This provision applies to state governments under the Fourteenth Amendment. ***Gitlow v. New York*, 268 U.S. 652, 666 (1925)**. The distribution of literature in the nature of "handbills" – as defined by Ordinance 7861 – is a form of speech protected by the Free Speech Clause of the First Amendment. ***Martin v. City of Struthers*, 319 U.S. 141, 143 (1943).** And, as Horina's speech addresses religious matters, it is considered speech of the highest constitutional order. ***See DeBoer v. Vill. of Oak Park*, 267 F.3d 558, 570 (7th Cir. 2001), citing *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995).**

When regulating First Amendment activity in a public forum, the burden a government must meet depends upon whether the speech restriction is "content based" or "content neutral." Both parties to this matter agree that Ordinance 7861 is "content neutral." When speech is content neutral, the government must show that the restriction is: (1) "narrowly tailored to further substantial government interests," and (2) "leave[s] open ample alternative means for communicating the desired message."***Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).** Accordingly, Ordinance 7861 will be deemed facially unconstitutional unless Granite City can show that it is both narrowly tailored to further substantial government interests and leaves open ample alternative means for Horina to communicate his religious message.

The Court first considers whether the Ordinance is aimed at furthering a substantial

government interest.  Earlier in the procedural history of this matter, regarding Ordinance 7861's predecessor, Ordinance 5.78.010, the Court thoroughly considered this question.  Speaking on this issue, this Court stated:

> [T]here is no doubt a city has a legitimate interest in protecting its citizens and ensuring that its streets and sidewalks are safe for all citizens. **Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 683-85 (1992).**  A city's interest in maintaining the flow of pedestrian traffic is intertwined with the concern for public safety.  **See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 650-51 (1981).**  However, Granite City must be able to justify the necessity of the ordinance.  In the context of a First Amendment challenge under the narrowly tailored test, Granite City has the burden of showing that there is evidence supporting its proffered justification. **DiMa Corp. v. Town of Hallie, 185 F.3d 823, 829 (7th Cir. 1999).**
>
> However, neither at the hearing nor in its pleadings submitted after the Court directed the parties to brief the merits of Horina's preliminary injunction motion, did Granite City offer justification for the necessity of the ordinance.  While the Court assumes that some sort of safety and congestion concerns motivated Granite City's invocation of the ordinance, Granite City "cannot blindly invoke safety and congestion concerns without more." **Weinberg v. City of Chicago, 310 F.3d 1029, 1038 (7th Cir. 2002).**  However, Granite City has offered no empirical studies, no police records, no reported injuries, nor evidence of any lawsuits filed as a result of leafleting in Granite City.  The Court finds that only speculation exists as to the justification of this ordinance, which is problematic, as the United States Supreme Court has stated that it has "never accepted mere conjecture as adequate to carry a First Amendment burden." **Nixon v. Shrink Missouri Government PAC, 528 U.S. 377, 392 (2000).**  Moreover, "[u]sing a speech restrictive blanket with little or no factual justification flies in the face of preserving one of our most cherished rights." **Weinberg, 310 F.3d at 1039.**  Accordingly, the Court finds that at this stage Granite City has failed to show the ordinance advances a significant governmental interest. **Cf. Wateska v. Illinois Public Action Council, 796 F.2d 1547 (7th Cir. 1986), aff'd, 479 U.S. 1048 (1987).**

(Doc. 35, pp. 11-12).

As to Ordinance 7861, this Court's analysis – and conclusion – is much the same. Ordinance 7861's stated purpose is to protect Granite City citizens' "desire to be free of unwanted intrusion, trespass, harassment, and litter ...." (Doc. 56, Ex. 1). Nonetheless, as was the case with Ordinance 5.78.010, Granite City again has failed to present to this Court anything but "mere conjecture" as to the justification for Ordinance 7861.  Granite City has offered no empirical studies,

testimony, police records, reported injuries, or anything else to show that "handbilling" constitutes or in any way results in "unwanted intrusion, trespass, harassment, [or] litter." Moreover, when specifically questioned by the Court on this issue at the March 24th hearing, Granite City conceded that it had not conducted any additional studies or fact-gathering on Ordinance 7861's stated purpose.

Granite City's second failure to present any sort of evidence on this issue is all the more glaring in light of the fact that this Court previously enjoined Granite City from enforcing Ordinance 5.78.010 for that very reason. Concluding the above-cited discussion regarding Ordinance 5.78.010's purported purpose, this Court stated, "[h]aving found that Granite City has failed to show the ordinance advances a significant governmental interest, [no further discussion] is necessary for purposes of issuing a preliminary injunction" (Doc. 35, p. 12). Since the Court issued that Order, there has been no change in controlling law that would now persuade this Court to accept "mere conjecture" as establishing that Ordinance 7861 advances a substantial government interest.

For the purpose of this Court's preliminary injunction analysis, Granite City's failure to present evidence showing that Ordinance 7861 targets a substantial government interest alone is sufficient for this Court to find that Horina has "a reasonable likelihood of success" on the merits of his claim.

Nonetheless, even if Granite City offered evidence that the ordinance is necessary because of a relationship between Horina's handbilling activities and the actual or potential presence of "unwanted intrusion, trespass, harassment, [or] litter," that correlation would not necessarily mean that Ordinance 7861 is narrowly tailored to prevent those purported disturbances.

On the contrary, Ordinance 7861 still would appear constitutionally inadequate in a number of ways. For instance, this Court has trouble seeing how an ordinance requiring a handbiller

to actually approach an occupant of a residence or vehicle to seek their permission to leave a handbill *prevents* "unwanted intrusion, trespass, or harassment." An Ordinance that encourages handbillers to ring doorbells or knock on car windows rather than simply placing a handbill on a car or residence seems more intrusive, possibly confrontational, and more likely to achieve the direct opposite result.

Moreover, Ordinance 7861 defines a "handbill" as including "any leaflet, pamphlet, brochure, notice, handout, circular, card, photograph, drawing, or advertisement, printed on paper or on cardboard." This definition is extremely broad, leading this Court to believe that even if Ordinance 7861's purpose was found to be legitimate, the Ordinance still likely would "burden substantially more speech than [would be] necessary to further [that interest]." ***Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).** That belief was strengthened all the more at the March 24th hearing on this matter, when Granite City itself conceded that Ordinance 7861 possibly could be construed broadly enough to prohibit dissemination even of such common forms of communication as a Granite City resident's weekly "throwaway" newspaper.

For all these reasons, this Court finds that Horina has shown a "reasonable likelihood of success" on the merits of his claim.

Having found that Horina has met his threshold burden, this Court now considers the second half of the overall preliminary injunction analysis: (1) balancing the harm to the parties that will result from the issuance of an injunction and (2) determining whether the injunction is in the public interest. ***See Joelner*, 378 F.3d at 627-29.**

*Harm to the Parties and the Public Interest*

As to the harm Horina will suffer if his injunction is denied, at the March 24, 2006 hearing, Horina testified that he has curtailed his leafleting for fear of being ticketed or arrested

pursuant to Ordinance 7861. As this Court has already noted, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." **Elrod, 427 U.S. at 373.** Granite City, on the other hand, has offered no evidence of any harm that would befall it if an injunction were put in place preventing it from enforcing Ordinance 7861.

In addition, the public interest weighs in favor of granting the injunction. "It is always in the public interest to protect First Amendment liberties." **Joelner, 378 F.3d at 620;** *see also* **Newsom v. Albemarle County School Bd., 354 F.3d 249, 261 (4th Cir. 2003)("Surely, upholding constitutional rights serves the public interest"). Cf. Homans v. City of Albuquerque, 264 F.3d 1240, 1244 (10th Cir. 2001)("[W]e believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression.")** Therefore, the Court finds the balance of harm to the parties and the public interest weigh in favor of issuing the injunction.

### Conclusion:

As the foregoing analysis illustrates, Horina has satisfied every element required of him for this Court to grant his motion for a preliminary injunction regarding Ordinance 7861. Accordingly, the Court **GRANTS** Horina's amended motion for preliminary injunction (Doc. 53) and **ISSUES** a preliminary injunction preventing Granite City, Illinois from enforcing Granite City Ordinance 7861, entitled "An Ordinance Repealing the Existing Handbill and Leafleting Ordinance and Prohibiting Certain Leafleting," until this litigation is resolved.

When this Court granted Horina's first motion for an injunction, it required Horina to post bond in the amount of One Thousand Dollars ($1,000.00) to cover taxable costs in the event Granite City prevails (*See* Doc. 35). Accordingly, the Court will not require Horina to post any

additional security amount pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 65(c)**.

    **IT IS SO ORDERED.**

    **Dated this 19th day of May, 2006.**

                                                <u>s/ Michael J. Reagan</u>
                                               **MICHAEL J. REAGAN**
                                               **United States District Judge**