## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DONALD N. HORINA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **05-cv-0079-MJR** |
| | ) | |
| **CITY OF GRANITE CITY, ILLINOIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER FOLLOWING BENCH TRIAL

**REAGAN, District Judge:**

This case proceeded to bench trial before the undersigned Judge on October 30, 2006. Prior to that trial, on October 5, 2006, this Court had granted Plaintiff Donald Horina's motion for judgment on the pleadings (Doc. 65), and had found in favor of Horina on the merits of the underlying matter (*see* Doc. 78). Consequently, the bench trial held on October 30, 2006, was only on the issue of damages.

**Factual Background and Procedural History:**

In ruling on Horina's motion for judgment on the pleadings, the Court relied upon the following procedural and factual history:

Plaintiff Donald Horina is a Christian who feels obligated to tell others about their need to be "born again." He accomplishes his purpose primarily through public distribution of free religious literature, also known as gospel tracts. Horina offers the tracts on public sidewalks and places them on automobile windshields in a manner that does not impede pedestrian traffic.

On July 26, 2003, while on a public sidewalk in Granite City, Illinois, Horina placed

1

a gospel tract through the open window of a vehicle, resulting in a Granite City police officer issuing a ticket to Horina for violating Granite City Ordinance Chapter 5.78.010,[1] the "Handbill Distribution Ordinance" (hereinafter "Ordinance 5.78.010").

On April 19, 2004, Horina appeared at an administrative hearing regarding the ticket. At the hearing, the citation was amended to a charge of trespass to vehicle under a different city ordinance, and Horina pled guilty and was fined $100.00.

On February 4, 2005, Horina initiated this case by filing a complaint for declaratory judgment, preliminary and permanent injunctive relief and compensatory damages (Doc. 1).  He sought to enjoin Granite City from enforcing Ordinance 5.78.010 on the grounds that it unconstitutionally prohibited Horina and similarly-situated third persons from exercising their rights to freedom of speech and religion, and violated their equal protection rights under the First and Fourteenth Amendments (*See* Doc. 1).  In furtherance of this objective, on April 27, 2005, Horina filed a motion for a temporary and preliminary injunction (Doc. 7) seeking, among other things, preliminary and permanent injunctions restraining Granite City from enforcing Ordinance 5.78.010. On May 20, 2005, this Court held a hearing on that motion and, following that hearing, granted Horina's request for a preliminary injunction prohibiting Granite City from enforcing Ordinance 5.78.010 (*See* Doc. 35).

In response, on November 15, 2005, Granite City repealed Ordinance 5.78.010 and

---

[1] Ordinance 5.78.010 stated in pertinent part: "It is unlawful for any person, firm or corporation to distribute indiscriminately to the public any cards, circulars, handbills, samples of merchandise or any advertisement or advertising matter whatsoever on any public street or sidewalk or other public place in the city; provided, that this section shall not be construed to prohibit the peddling or sale of any article or publication that may carry or be accompanied by advertising matter where a charge is made or a price is paid for such article or publication."

established Granite City Ordinance 7861, entitled "An Ordinance Repealing the Existing Handbill and Leafleting Ordinance and Prohibiting Certain Leafleting" (hereinafter "Ordinance 7861")(*See* Doc. 56, Ex. 1). According to the preamble of Ordinance 7861, the purpose of the ordinance is to protect Granite City residents' "right to free speech, and the desire to be free of unwanted intrusion, trespass, harassment, and litter ...." *Id.* Apparently to further this objective, Ordinance 7861 enumerates several restrictions on the depositing, distributing, or selling of "handbills," which the ordinance defines as "any leaflet, pamphlet, brochure, notice, handout, circular, card, photograph, drawing, or advertisement, printed on paper or on cardboard." *Id.*

On February 6, 2006, dissatisfied with Granite City's revisions to its handbilling restrictions, Horina filed an amended motion for preliminary injunction (Doc. 53). In that motion, Horina asserted that Ordinance 7861, like its predecessor, is unconstitutional. Specifically, Horina asserted that Ordinance 7861 is vague and overbroad, and curtails more speech than necessary to achieve any compelling, significant, or substantial governmental interest. Horina further argued that Granite City's enforcement of Ordinance 7861 causes him to be irreparably harmed by chilling his exercise of First Amendment rights to freedom of speech and religion.

On March 24, 2006, this Court held a hearing on that motion and, on May 19, 2006, granted that motion, and preliminarily enjoined Granite City from enforcing Ordinance 7861 (*see* Doc. 66).

On April 21, 2006, Horina filed an amended motion for judgment on the pleadings (Doc. 65). After carefully reviewing the evidence and arguments presented by both parties, this Court found that Granite City Ordinance 7861 was unconstitutional on its face and granted Horina's amended motion for judgment on the pleadings (Doc. 65). Consequently, the only issue remaining

3

in this case was the amount of damages, if any, owed by Granite City to Horina for having violated his constitutional rights.

**Donald Horina's Testimony**:

At the damages trial, the only evidence presented to the Court was the testimony of Donald Horina.  Horina testified to the following:

1.  Horina felt that he was injured by Granite City's enactment of Ordinance 5.78.010's because he became "fearful of being ticketed or arrested." Horina testified that he felt that his ability to spread the gospel and stand up for his beliefs "as the Lord directed him" was hindered.

2.  Horina testified that he felt Ordinance 5.78.010 hindered him from obeying his religion and reaching his intended audience.

3.  After Ordinance 5.78.010 was enacted, Horina testified, he distributed literature in Granite City for a period of time but feared being penalized for doing so.

4.  Horina stated that there was a period of time when he did not leaflet at all while Ordinance 5.78.010 was in effect.

5.  Horina further testified that he felt that his reputation with some of the pro-life activists he associated with was injured and that he was called a "chicken" and a "quitter" for refraining from leafleting after the passage of Ordinance 5.78.010.

6.  Including his trips to court as a result of the ticket he received, Horina testified, he was required to travel to court "six or eight times" from the St. Charles area, which Horina testified is roughly 30 miles away from the Granite City court and this Court.  During each trip, Horina stated, he bought himself meals costing below $10 each.

7.  Under cross-examination, Horina testified that his arrest for "leafleting" was for

his placing a leaflet through the window of a car belonging to a man who had specifically told Horina to refrain from doing so.

8. Horina admitted that when he went to court as a result of that incident, on April 19, 2004, he plead guilty to a trespass charge and was never found guilty of having violating the first ordinance, Ordinance 5.78.010.

9. Under cross-examination, Horina admitted that at an earlier hearing before this Court, he had testified that before the passage of Ordinance 5.78.010 he had leafleted about "once a week." Nonetheless, Horina testified at trial that, "as [he] further reflect[ed]" on the matter, he felt he had actually leafleted "much more often" before the passage of Ordinance 5.78.010 than he had previously testified.

10. Horina admitted that he has not suffered any direct pecuniary or monetary damage as a result of Granite City's passage of Ordinance 5.78.010.

11. In response to the Court's questioning, Horina gave the following testimony:

   a. Before the passage of Ordinance 5.78.010, Horina would leaflet an average of "two times per week."

   b. After receiving his ticket, his leafleting activities were reduced substantially, and he did not leaflet at all for a period of approximately nine months to a year.

   c. After this Court issued a preliminary injunction regarding Ordinance 5.78.010, Horina testified, his leafleting activity increased to about "once per week."

   d. Horina admitted that he also had hip-replacement surgery, and that this

5

surgery was also a reason for his decrease in leafleting activity.

**Argument of the Parties:**

Horina argues that he has suffered actual injury as the result of the constitutional violations posed by Ordinance 7861 and its predecessor, Ordinance 5.78.010. Horina asserts he is entitled to damages for five separate categories of injury: (1) the ordinances hindered his ability to reach the intended audience of his speech, particularly people going into the Granite City abortion clinic; (2) the ordinances restricted his freedom to follow his religion; (3) he suffered emotion distress; (4) he felt "humiliated"; and (5) his reputation suffered, as he was called a "chicken" and a "quitter" for refraining to leaflet. Horina asks for a total of $5,000 for having suffered these purported injuries.

Granite City asserts that Horina is entitled to nothing more than nominal damages. Granite City argues that damages may not be awarded based on an abstract value of a constitutional right and that Horina has failed to adequately show any actual injury.

**Findings of Facts and Conclusions of Law**

Damages in § 1983 cases are designed to compensate a plaintiff for injuries caused by the constitutional deprivation at issue. ***Memphis Community School Dist. v. Stachura,* 477 U.S. 299 (1986); *Carey v. Piphus,* 435 U.S. 247 (1978)**. However, the Supreme Court's decisions on this matter uniformly leave "no room for non-compensatory damages measured by the [fact-finder's] perception of the abstract 'importance' of a constitutional right." ***Memphis Community School Dist.,* 477 U.S. at 309-310**. In the event a plaintiff has been constitutionally deprived, but unable to show actual injury, only nominal damages are recoverable in order to vindicate his constitutional rights. ***See Carey,* 435 U.S. at 266-67**.

6

Civil rights plaintiffs are not barred from an award of substantial, compensatory damages just because the monetary value of a particular injury is difficult to ascertain. *City of Watseka v. Illinois Public Action Council,* **796 F.2d 1547, 1559 (7th Cir.1986).** Nonetheless, because Section 1983 gives rise to "a species of tort liability," *Imbler v. Pachtman,* **424 U.S. 409, 417 (1976),** common-law rules of tort damages must be adapted to § 1983 cases. *See Carey,* **435 U.S. at 258**. Accordingly, this Court must not award damages that have not been proven to a reasonable certainty, or are too remote or are not proximately caused by the Defendant's conduct

Applying these principles of law to the record before it, the Court makes the following findings:

1.   Horina has shown that he suffered emotional distress, suffered from feelings of "humiliation," and was prevented – to some extent – from exercising his First Amendment rights as a result of Granite City's passage of the ordinances at issue.  Not unexpectedly, given the relatively abstract nature of these claim, he has not shown specific pecuniary or monetary loss in regards to these injuries, and he has not provided additional supporting evidence for his emotional distress claims (i.e. - health-care provider  testimony or medical records).

Moreover, Horina's testimony was inconsistent as to the extent that the passage of the ordinance prevented him from leafleting.  In noting this fact, the Court is not saying that it doubts Horina's credibility during his testimony on these matters. To the contrary, he was honest, forthright and credible.  The Court believes that the  inconsistencies in Horina's testimony were more related to Horina's memory than any attempt to confuse or mislead the Court.  Nonetheless,  this Court was unable to determine with precision either: 1) Horina's actual frequency of leafleting before the

7

passage of the ordinance as compared to *after* the passage of the ordinance, or 2) how much of any decrease in Horina's leafleting activities was related to the chilling effect of the ordinance instead of Horina's physical condition following hip-replacement surgery.

Because the precise extent to which  his constitutional rights were chilled remains relatively unclear, and because Horina has minimal evidence regarding his emotional distress and feelings of humiliation, the Court is left with compensating him for non-economic and relatively abstract rather than concrete damages. The Court finds an appropriate award for the humiliation, emotional distress, and loss of First Amendment rights Horina endured to be $2100.00.

2.  Horina's claim that his reputation suffered injury, however, fails for lack of competent evidence sufficient to support a damage award. Horina's claim that his reputation suffered because people called him a "quitter" and a "chicken" when he ceased leafleting is more appropriately an element of his emotional distress/ humiliation claim than one of damage to reputation and was factored in when computing the damages in the paragraph immediately above.  At trial, nobody testified that Horina's reputation in the community suffered at the hands of the unconstitutional ordinances. His singular opinion that his reputation suffered is speculative and therefore non-compensable.

3. Certain costs and expense related to Horina's prosecution of his meritorious claim are compensable.  The Court finds that the time and travel expenditures and meal costs Horina incurred for his Court appearances merit an award of $672.00.[2]

---

[2]This amount should adequately cover approximately 8 court appearances (estimating one hour each at $25.00 per hour), round-trip travel of one hour per trip( again at $25.00 per hour), mileage (480 miles at .40 per mile) and meals (eight at $10 each.).

4. In addition, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 54(d)(1), as the prevailing party in this matter, Horina is entitled to an award of costs incurred in litigating this case.  By January 27, 2007, Horina's counsel should file his Bill of Costs.  See the undersigned Judge's website regarding bills of costs at www.ilsd.uscourts.gov,

For the reasons stated above, the Clerk is directed to enter judgment in favor of Horina and against defendant The City of Granite City, Illinois in the sum of $2772.00.

**IT IS SO ORDERED.**

**Dated this 27th day of December, 2006.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**

9