IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DONALD N. HORINA, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 05-cv-0079-MJR |
| | ) | |
| CITY OF GRANITE CITY, ILLINOIS, | ) | |
| | ) | |
|     Defendant. | ) | |

ORDER AND MEMORANDUM

**REAGAN, District Judge:**

      Before this Court are two motions[1] for attorney's fees: Plaintiff's Interim Petition for Fees and Costs through December 27, 2006 (Doc. 86) and Motion for Attorney's Fees Pursuant to **42 U.S.C. § 1988** (Doc. 88).

**I.    Background and Introduction**

      Horina is a Christian who feels obligated to tell others about their need to be "born again." He accomplishes his purpose primarily through public distribution of free religious literature, also known as gospel tracts. Horina offers the tracts on public sidewalks and places them on automobile windshields in a manner that does not impede pedestrian traffic.

      On July 26, 2003, while on a public sidewalk in Granite City, Illinois, Horina placed a gospel tract through the open window of a vehicle, resulting in a Granite City police officer issuing

---

[1] The first petition covers legal work performed by employees of the law firm of Mauck & Baker, LLC, including Jason Craddock; the second covers the work of Jason Craddock for time after he left Mauck & Baker LLC.

a ticket to Horina for violating Granite City Ordinance Chapter 5.78.010,[2] the "Handbill Distribution Ordinance" (hereinafter "Ordinance 5.78.010").

On April 19, 2004, Horina appeared at an administrative hearing regarding the ticket. At the hearing, the citation was amended to a charge of trespass to vehicle under a different city ordinance, and Horina was fined $100.00.

On February 4, 2005, Horina initiated this case by filing a complaint for declaratory judgment, preliminary and permanent injunctive relief and compensatory damages (Doc. 1). He sought to enjoin Granite City from enforcing Ordinance 5.78.010 on the grounds that it unconstitutionally prohibited Horina and similarly-situated third persons from exercising their rights to freedom of speech and religion, and violated their equal protection rights under the First and Fourteenth Amendments (*See* Doc. 1). In furtherance of this objective, on April 27, 2005, Horina filed a motion for a temporary and preliminary injunction (Doc. 7) seeking, among other things, preliminary and permanent injunctions restraining Granite City from enforcing Ordinance 5.78.010. On May 20, 2005, this Court held a hearing on that motion and, following that hearing, granted Horina's request for a preliminary injunction prohibiting Granite City from enforcing Ordinance 5.78.010 (*See* Doc. 35).

In response, on November 15, 2005, Granite City repealed Ordinance 5.78.010 and established Granite City Ordinance 7861, entitled "An Ordinance Repealing the Existing Handbill

---

[2] Ordinance 5.78.010 stated in pertinent part: "It is unlawful for any person, firm or corporation to distribute indiscriminately to the public any cards, circulars, handbills, samples of merchandise or any advertisement or advertising matter whatsoever on any public street or sidewalk or other public place in the city; provided, that this section shall not be construed to prohibit the peddling or sale of any article or publication that may carry or be accompanied by advertising matter where a charge is made or a price is paid for such article or publication."

and Leafleting Ordinance and Prohibiting Certain Leafleting" (hereinafter "Ordinance 7861")(*See* Doc. 56, Ex. 1). According to the preamble of Ordinance 7861, the purpose of the ordinance is to protect Granite City residents' "right to free speech, and the desire to be free of unwanted intrusion, trespass, harassment, and litter ...." *Id.* Apparently to further this objective, Ordinance 7861 enumerates several restrictions on the depositing, distributing, or selling of "handbills," which the ordinance defines as "any leaflet, pamphlet, brochure, notice, handout, circular, card, photograph, drawing, or advertisement, printed on paper or on cardboard." *Id.*

On February 6, 2006, dissatisfied with Granite City's revisions to its handbilling restrictions, Horina filed an amended motion for preliminary injunction (Doc. 53). In that motion, Horina asserted that Ordinance 7861, like its predecessor, is unconstitutional. Specifically, Horina asserted that Ordinance 7861 is vague and overbroad, and curtails more speech than necessary to achieve any compelling, significant, or substantial governmental interest. Horina further argued that Granite City's enforcement of Ordinance 7861 causes him to be irreparably harmed by chilling his exercise of First Amendment rights to freedom of speech and religion.

On March 24, 2006, this Court held a hearing on that motion, and, on May 19, 2006, granted that motion (*see* Doc. 66).

On April 21, 2006, Horina filed an amended motion for judgment on the pleadings (Doc. 65). After carefully reviewing the evidence and arguments presented by both parties, this Court found that Granite City Ordinance 7861 was unconstitutional on its face and granted Horina's amended motion for judgment on the pleadings (Doc. 65). Consequently, the only issue remaining in this case was the amount of damages, if any, owed by Granite City to Horina for having violated his constitutional rights.

3

On October 30, 2006, this case proceeded to bench trial on the issue of damages. Following that trial, on December 27, 2006, this Court ordered the Clerk of the Court to enter judgment in favor of Horina and against Granite City in the sum of $2772.00 (*see* Doc. 83). Subsequently, Horina's attorneys filed two motions for attorney's fees pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 54(d)** (Docs. 86, 88 (as amended by Doc. 90)). Granite City has filed objections (Docs. 91, 113). This matter being fully briefed, the Court now rules as follows.

## II. Analysis

Section 1988(b) of Title 42 states that in an action to enforce the provisions of § 1981 or § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." The Seventh Circuit has remarked: "[D]istrict courts entertain a 'modest presumption' that prevailing parties are entitled to a reasonable attorney's fee," but this presumption is rebuttable. ***Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 585 (7th Cir. 2000), *citing Harris Trust & Savings Bank v. Provident Life & Acc. Ins. Co.*, 57 F.3d 608, 617 (7th Cir. 1995).**

While the prevailing party in a federal civil rights case is entitled to an award of attorney's fees, **42 U.S.C. § 1988**, the fees must be reasonable, and the reasonable fee is sometimes zero. ***Farrar v. Hobby*, 506 U.S. 103, 115 (1992); *Briggs v. Marshall*, 93 F.3d 355, 361 (7th Cir. 1996); *Maul v. Constan*, 23 F.3d 143, 147 (7th Cir. 1994); *Cartwright v. Stamper*, 7 F.3d 106, 110 (7th Cir. 1993); *Willis v. City of Chicago*, 999 F.2d 284, 290 (7th Cir. 1993)**.

In this matter, using the lodestar[3] method of calculating fees (reasonable hourly rate multiplied by time reasonably necessary for proper representation), Horina's attorneys request

---

[3] ***See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995).**

$17,328.75 in their interim petition for fees and costs (Doc. 86), $51,615.00 in their second motion for fees (Doc. 88) and $587.02 in costs and expenses (*see* Doc. 86) for a grand total of **$69,530.77**.

Granite City does not dispute that Horina is entitled to attorney's fees (Doc. 91, p. 2). However, Granite City does object to Horina's interim petition for fees in three respects. Specifically, Granite City asserts that: (1) certain items in Horina's interim petition were not necessarily related to the prosecution of the claims in this matter; (2) Horina is seeking recovery of fees for duplicate entries submitted by both the law firm of Mauck & Baker, LLC and Jason Craddock; and (3) the hourly rate of $500.00 listed in Horina's petition for work completed by John Mauck is excessive (*see* Doc. 91, p. 2). As to the second motion for attorney's fees (Doc. 88, amended by Doc. 90), Granite City objects that certain items in that motion were not necessary or related to the prosecution of the claims in this matter (*see* Doc. 113, p. 2) but does not take issue with Craddock's claimed hourly rate of $225.00.

Once the lodestar amount is calculated, the Court may adjust the amount up or down to take into account various factors regarding the litigation. These factors include: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. **Spellan v. Bd. of Educ. for Dist. 111, 59 F.3d 642, 645 (7th Cir. 1995). See also Hensley, 461 U.S. at 430 n. 3;** *Mathur v. Board of Trustees of Southern Illinois University*, **317 F.3d 738, 742 (7th Cir. 2003)**.

However, when dealing with a situation such as this, where the prevailing party receives only nominal or minimal damages, ***Briggs vs. Marshall*, 93 F. 3d 355, 361 (7th Cir. 1996)**, teaches that applying the three-part test from Justice O'Connor's concurrence in *Farrar*, **506 U.S. at 120-21**, is appropriate. The three factors are: (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which plaintiff prevailed; and (3) the public purpose of the litigation. Only if these *Farrar* factors weigh in favor of awarding fees does the Court need to consider the lodestar factors. Although Granite City concedes that Horina is entitled to attorney's fees in the present matter (*see* Doc. 91, p. 2; Doc. 113, p. 2), the Court will look briefly at each factor.

    (1)    <u>Difference Between Judgment Recovered and Recovery Sought</u>

This is the most significant of the three factors. ***Briggs*, 93 F. 3d at 360.** The Court must determine whether, as in *Farrar*, Horina was aiming high and fell far short, ***see also Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir. 1996);** ***Romberg v. Nichols*, 48 F.3d 453, 455 (9th Cir. 1995)**, in the process inflicting heavy costs on his opponent and wasting the court's time, *or* whether the case was simply a small claim and was tried accordingly. In the former, fees are not awarded or are minimized. In the latter, when the civil rights plaintiff aims small and obtains an amount that is significant in relation to that aim (he need not reach the target), he is prima facie entitled to an award of fees, even if the case sets no precedent. ***Hyde vs. Small*, 123 F. 3d 583 (7th Cir. 1997).**

This factor clearly weighs in favor of awarding fees. Horina did not necessarily "aim high" in this matter. Horina commenced this suit for the sole purpose of having Granite City's hand-billing ordinances declared unconstitutional and sought only compensatory damages and reasonable costs and expenses in addition to that goal. After convincing this Court to declare Ordinance 7861

unconstitutional, Horina only requested compensatory damages in the amount of $5,000. After reviewing the record of this matter, this Court awarded him $2772.00, or 55% of his requested compensatory relief. This matter certainly is not similar to that in *Farrar*, where the plaintiff "asked for a bundle and got a pittance." *Farrar*, **506 U.S. at 120.** It was clear to the Court as Horina testified that he was strident in his beliefs and desire to leaflet and that money was of secondary, if any, importance to him. The Court finds that this factor weighs in favor of awarding attorney's fees.

(2)     Significance of Legal Issue on which Plaintiff Prevailed

This factor, which evaluates the extent to which Horina succeeded on his claims, is the least significant of the three. In the instant case, Horina was entirely successful in his suit. Horina set out to have the Granite City ordinances prohibiting hand-billing declared unconstitutional and succeeded. This factor weighs in favor of an award of fees.

(3)     Public Purpose Served by Plaintiff's Suit

Since all successful §1983 claims necessarily involve a violation of a right, attorney's fees are appropriate after *Farrar* only when a plaintiff's victory entails something more than the conclusion that a constitutional right has been infringed. *Maul*, **23 F. 3d at 146**. That is not to say, however, that there are petty constitutional violations that are per se *unworthy* of redress. As stated in *Hyde*, **123 F. 3d at 585**: ". . . the cumulative effect of petty violations of the Constitution arising out of the interactions between the police (and other public officers) and the citizenry on the values protected by the Constitution may not be petty, and if this is right then the mere fact that a suit does not result in a large award of damages or the breaking of new constitutional ground is not a good ground for refusing to award any attorneys' fees."

In the instant case, Horina convinced this Court to declare unconstitutional an

ordinance that not only infringed on Horina's First Amendment freedom of speech rights, but infringed on the rights of all Granite City residents and infringed on speech addressing *religious* matters, speech of the highest constitutional order. ***See DeBoer v. Vill. of Oak Park,* 267 F.3d 558, 570 (7th Cir. 2001), citing *Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 760 (1995).** As such, Horina's cause of action served an important service to the public. This factor weighs in favor of awarding fees.

In sum, all three *Farrar* factors weigh in favor of awarding fees in this cause of action. Moreover, Granite City concedes that a fee award is appropriate in this matter. Nonetheless, it should be noted that the party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." ***Spegon v. Catholic Bishop of Chicago***, **175 F.3d 544, 550 (7th Cir.1999).** Accordingly, the Court now turns to an examination of the requested fees and costs and considers the lodestar factors.

As mentioned, Horina's attorneys request $17,328.75 in their interim petition for fees and costs (Doc. 86), as well as $51,615.00 in their second motion for attorney's fees (Doc. 88), for a total amount of $68,943.75. In addition, Horina's counsel requests $ 587.02 in costs and expenses in their interim petition (Doc. 86). The requested attorney's fees are summarized in the following tables:

(From: Doc. 86, Exh. E, Interim Petition for Fees and Costs through December 27, 2006)

| ATTORNEY/TIMEKEEPER | HOURS | RATE | TOTAL |
|---|---|---|---|
| John W. Mauck | 5.9 | $500/hr. | $2,950.00 |
| Jason R. Craddock | 58.6 | $225/hr. | $13,185.00 |

| Elizabeth A McGuan (Paralegal) | 9.55 | $125/hr. | $1,193.75 |
|---|---|---|---|
| | | | TOTAL: $17,328.75 |

(From: Doc. 88, Motion for Attorney's Fees Pursuant to **42 U.S.C. § 1988**)

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Jason R. Craddock | 229.4 | $225/hr. | $51,615.00 |

After reviewing the record of this matter, as well as the affidavits and other documents submitted by the attorneys for both parties, the Court has decided to reduce the attorney's fees requested for the reasons indicated in the itemized lists below. In addition, the Court will award attorney's fees for services rendered by John Mauck at a rate of $300 per hour, the low end of the range at which the market values his services (*see* Doc. 86, Exhibit G). Although Horina argues that a $500 "high end" rate is appropriate because of Mauck's extensive experience in the areas of First Amendment and religious freedom law, the Court notes that Horina's success in this matter was much more the result of Granite City's failures than any highly-skilled lawyering on Horina's behalf. This Court declared Ordinance 7861 unconstitutional because Granite City failed – after *repeatedly* being instructed to do so – to present *any* evidence showing that Ordinance 7861 advanced a substantial governmental interest (*see* Doc. 78, p. 8).

Beginning with its Order granting in part and denying in part Horina's motion for temporary and preliminary injunction (Doc. 35), the Court noted deficiencies in the hand-billing ordinance that essentially created a blueprint for Granite City to follow in enacting a substitute ordinance more likely to pass constitutional muster. But Granite City ignored the Court's guidance and passed a second ordinance as constitutionally infirm as the first. This being the case, any lawyer

of reasonable competence – or even a *pro se* litigant – likely would have prevailed in this cause of action.

As mentioned, two reasons for adjusting the lodestar amount are "the novelty and difficulty of the questions [and] the skill requisite to perform the legal services properly." **Spellan, 59 F.3d at 645.** In this matter, the questions were not necessarily novel nor difficult and, for the reasons already stated, a high degree of skill was not requisite for Horina to prevail in this matter.

Moreover, the Court notes a $300 hourly rate is consistent with the hourly rate suggested by Granite City's affiant, attorney Jon Rosenstengel, who with 14 years experience opines that "...the market rate for plaintiff's attorney work in St. Clair County, State of Illinois is $300.00 an hour" (Doc. 97-2). The "market rate" is akin to the "customary" fee referred to above as another factor that may be considered in adjusting the lodestar amount.[4]

**Recalculation of Mauck's Lodestar Amount:**

| ATTORNEY | HOURS CLAIMED | RATE CLAIMED | TOTAL CLAIMED | COURT ADJUSTED RATE | TOTAL DISALLOWED | TOTAL ALLOWED |
|---|---|---|---|---|---|---|
| John W. Mauck | 5.9 | $500/hr. | $2950.00 | $300/ hr | $1,180.00 | $1,770.00 |

In addition to the reduction in the hourly rate for John Mauck's services, the Court makes the following adjustments to the attorney's fees petitions:

---

[4]That the "market" in southern Illinois differs from Mr. Mauck's Chicago market can be illustrated by the Court's recounting one of its "back-in-the-day" stories: As a lawyer representing an injured driver in the very court room I now sit, I was co-counsel with a Chicago lawyer who represented the estate of an individual killed in the same accident. In closing argument, defense counsel suggested the value of the death case to be equivalent to the cost of a house and college education for the decedent's child. My Chicago co-counsel, immediately upon hearing this suggestion whispered to me; "Did he just tell the jury to give me $750,000? "No," I replied, "he just suggested the jury give you $50,000."

**Adjustments to Doc. 86, Plaintiff's Interim Petition for Fees**

A portion of the fee request relates to time expended garnering publicity and drafting press releases. These line items are not reasonably related to the prosecution of the case, even though, as Horina argued, press coverage and publicity sometimes affects or causes a certain outcome in litigation. The Court need not reach that argument since the case was not resolved by agreement (which could have been influenced by the court of public opinion) but instead required judicial determination.

Consequently, the Court finds the following line items not compensable as not reasonably necessary for the prosecution of plaintiff's case:

John W. Mauck:
 2/23/2005: Inter office conference with Jason Craddock regarding: Belleville Democrat article and drafting press release
  o   0.4 hrs.
 3/2/2005: Inter office conference with Jason Craddock and redraft press release
  o   0.3 hrs.
 5/5/2005: Inter office conference with Jason Craddock about press coverage
  o   0.2 hrs.

**Total Mauck time redacted: 0.9 HRS.**
**Total Mauck amount redacted: $270.00**

Jason R. Craddock:
 2/15/2005: Put complaint into pdf format, discuss publicity with John Mauck
  o   0.4 hrs.
 2/21/2005: Emailing ADF regarding press matters and changing of sponsor
  o   0.5 hrs.
 2/23/2005: Inter office conference with John Mauck regarding press coverage
  o   0.3 hrs.
 3/1/2005: Draft Press release
  o   1.7 hrs.
 3/2/2005: Inter office conference with John Mauck regarding press release (.1); write press release (.7), send press release and complaint to newspapers (.04)
  o   1.2 hrs.
 3/3/2005: Speak with newspaper reporter regarding story about case (.6), speak with client about news interview (.2)
  o   0.8 hrs.
 3/10/2005: Discuss case via email with ADF, including research on question they posed.

11

- 0.8 hrs.
- 5/3/2005: Speak with news reporter about case, and have complaint faxed to reporter
    - 0.4 hrs.
- 5/5/2005: Find article and editorial about case and discuss with Mauck
    - 0.5 hrs.

**Total Craddock time redacted: 6.9 hrs.**
**Total Craddock amount redacted: $1,552.50**

Elizabeth A. McGuan:
- 5/9/2005: Begin work on draw on ADF grant; calls to JRC
    - 1.0 hrs.
- 5/10/2005: Organize file; make copy for our office with JRC takes original; discuss ADF grant with JRC over telephone.
    - 1.75 hrs.
- 5/16/2005: Work on draw on grant from ADF
    - 1.0 hrs.
- 5/17/2005: Complete letter, case update form, and billing report for request for draw from ADF grant for time that JRC was with the firm; copy for file
    - 2.0 hrs.

**Total McGuan time redacted: 5.75 hrs.**
**Total McGuan amount redacted: $718.75**


**The Court finds the following line items not compensable as not adequately detailed:**

John W. Mauck:
- 5/5/2005: Discuss transaction handling
    - 0.3 hrs.

**Total Mauck time redacted: 0.3 HRS.**
**Total Mauck amount redacted: $90.00**

Jason R. Craddock:
- 2/7/2005: Research on issues in his case
    - 0.4 hrs.

**Total Craddock time redacted: 0.4 hrs**
**Total Craddock amount redacted: $90.00**

**Summary of Court's findings after all adjustments to Doc. 86, Plaintiff's Interim Petition for Fees:**

| Total Fees Claimed | Fees Disallowed | Fees Allowed |
|---|---|---|
| $17,328.75 | $3,901.25 | $13,427.50 |

**Adjustments to second motion for attorney's fees "Motion for Attorney's Fees Pursuant to 42 U.S.C. § 1988." (Doc. 88, as amended by Doc. 90)**.

Counsel Jason Craddock seeks payment for fees incurred as a result of defending the underlying municipal violation which charged Horina with violating Ordinance 5.78.010, which was ultimately amended to "trespass to a vehicle" under a different ordinance. Plea negotiations resulted in this amended charge and Horina's fine of $100 for its violation. In support of his claim, Horina cites *Robinson vs. City of Harvey*, 2004 WL 2033714 (N.D. Ill. 2004) and *Shott vs. Rush-Pres.-St. Luke's Med. Ctr.*, 338 F.3d 736 (7th Cir. 2003) contending those opinions support the proposition that attorney's fees under **42 U.S.C. § 1988** are warranted for trial work prior to the trial in which plaintiff prevails.

*Robinson* and *Shott* are distinguishable from the instant case. *Shott* was brought under the Americans with Disabilities Act ("ADA"), **42 U.S.C. § 12101 et seq.** Unlike here, Shott's counsel tried the same case twice in that the first verdict was set aside by the Court, requiring a re-trial. The Court of Appeals, in permitting fees for both trials, reasoned: "when two trials are required to achieve the 'ultimate result,' a plaintiff should be compensated for both trials, so long as the time spent at both was 'reasonably expended.'" *Shott,* 338 F.3d at 739. Such is not the case in the instant case where the initial legal work was for defending a municipal ordinance violation that was eventually disposed of by a negotiated guilty plea to an amended charge not related to the case at bar. Unlike *Shott*, two trials

13

(or separate legal work) were not necessary to achieve the "ultimate result." The same analysis and conclusion applies to *Robinso*n which, likewise, was the re-trial of the same case.

Plaintiffs ultimate success was not dependent upon his success in the ordinance violation case so his counsel is not entitled to compensation for the work performed there. Consequently, the Court finds the following line items related to defending the ordinance violation not compensable as not reasonably necessary for the prosecution of plaintiff's case:

Jason R. Craddock
   8/18/03: Driving to Granite City, IL from Springfield, IL office (186 miles) and returning to Springfield, IL after court arraignment in court (3.2), discussion with client regarding arraignment and how to proceed in the case (.4)
   - 3.6 hrs.
   9/11/03: Research and prepare motion to dismiss [The Court assumes this relates to the city ordinance violation case.]
   - 1.0 hrs.
   9/12/03: Complete motion to dismiss [The Court assumes this relates to the city ordinance violation case.]
   - 0.5 hrs.
   9/15/03: Driving to Granite City, IL from Springfield, IL office (186 miles) and returning to Springfield, IL after court (3.0), presentation of Motion to Dismiss, told by hearing officer that matter would be continued (.3)
   - 3.3 hrs.
   4/19/04: Driving to Granite City, IL from Springfield, IL office (186 miles) and returning to Springfield, IL after court (3.0), present motion to dismiss, discuss with hearing officer regarding his inability to rule on constitutionality of ordinance, discuss amendment of charge to trespass with client and city atty, Nighohosshian, receive order reflecting client's plea of guilty for trespass, discussion with client following court (.5)
   - 3.5 hrs.

**Total Craddock time redacted: 11.9 hrs**
**Total Craddock amount redacted: $2677.5**

TOTAL TIME REDACTED: 11.9 hrs.

**Summary of Court's findings after all adjustments to Doc. 88, Motion for Attorney's Fees Pursuant to 42 U.S.C. § 1988**

| Total Fees Claimed | Fees Disallowed | Fees Allowed |
|---|---|---|
| $51,615.00 | $2,677.50 | $48,937.50 |

Based on the above deductions and adjustments, the Court awards attorney's fees to Horina's attorneys in the total amount of **$62,365.00** ($13,427.50(Doc.86)+ $48,937.50 (Doc. 88) ).

As to those *costs* requested in Horina's Interim Petition for Fees and Costs (Doc. 86), as mentioned, Horina requests $587.02 in costs in expenses. For the reasons already stated in this Court's previous Order awarding costs (Doc. 111), costs are appropriate in this matter pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 54(d)(1).** The Court finds all costs and expenses in Horina's Interim petition (Doc. 86) appropriate except for the charge for $250 listed as "2/3/2005: Mauck & Baker check to Clerk, U.S. District Court regarding fees for Filing ($150.00) and Appearance ($100.00) (ch# 3445)," as this Court has already compensated Horina's attorneys for those expenses (*see* Doc. 111). Deducting that amount from the costs and expenses requested, the Court awards to Horina additional costs in the amount of **$337.02.**

**III. Conclusion**

For the reasons stated, the Court hereby **GRANTS** *in part* and **DENIES** *in part* Horina's motions for costs and attorney's fees (Docs. 86, 88), awards to Horina costs in the amount of **$337.02**, and awards to Horina attorney's fees in the amount of **$62,365.00**.

      **IT IS SO ORDERED.**

      **DATED this 18th day of June, 2007.**

      **s/ Michael J. Reagan**
      **MICHAEL J. REAGAN**
      **United States District Judge**